**Slip Op. 09-84**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before**: Nicholas Tsoucalas, Senior Judge

_____
                                            :
JENNIFER DEPERSIA,                          :
                                            :
            PLAINTIFF,                       :
                                            :
            v.                               :  Court No. 08-00115
                                            :
UNITED STATES,                              :
                                            :
            DEFENDANT.                       :
_____:

<u>OPINION</u>

**Held**: Plaintiff's Motion for Judgment on the Agency Record is denied. The determination by the Assistant Secretary, Department of Homeland Security is affirmed.

Dated: August 11, 2009

<u>Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP</u>, (<u>David M. Murphy</u>; <u>Frances P. Hadfield</u>; <u>Michael J. Khorsandi</u>) for Jennifer Depersia, Plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney-in-Charge, International Trade Field Office; <u>Saul Davis</u>, Civil Division, Commercial Litigation Branch, United States Department of Justice; Of Counsel, <u>Christopher Chen</u>, Office of the Chief Counsel, United States Customs and Border Protection, for the United States, Defendant.

**Tsoucalas, Senior Judge:** Plaintiff moves for judgment upon the agency record, pursuant to Rule 56.1 of the Rules of the United States Court of International Trade ("USCIT"), seeking review of the denial of her application for a customs broker's license, which was based on her failure to achieve a passing score of 75% on the requisite examination.  Specifically, Plaintiff petitions this

Court for reversal of a decision by the Assistant Secretary of Homeland Security ("the Secretary" or "DHS") affirming the denial of credit for her answer to one examination question. Defendant has filed a response in opposition, seeking that the Court uphold the Secretary's decision. For the reasons stated below, Plaintiff's Motion for Judgment on the Agency Record is denied.

### BACKGROUND

Plaintiff sat for the April 2, 2007, administration of the Customs Broker License examination. In a letter dated June 22, 2007, the United States Customs and Border Protection[1] ("Customs" or "CBP") advised Plaintiff of her score of 71.25% (57 correct answers) on the examination, whereas a minimum passing grade of 75% (60 correct answers) or higher was required.[2] On July 24, 2007, Plaintiff wrote a letter to the Broker Management Branch of Customs challenging CBP's grading of four test questions. Customs notified Plaintiff on November 9, 2007, that her appeal as to all challenged questions was denied. In its letter, Customs included an

---

[1] Customs was transferred to DHS effective March 1, 2003, as a result of the reorganization of various federal agencies under the Homeland Security Act of 2002. See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2178 (2002).

[2] The examination is administered by Customs on the first Mondays in April and October pursuant to its statutory authority under 19 U.S.C. § 1641(b)(2), and is "designed to determine the individual's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters necessary to render valuable service to importers and exporters." 19 C.F.R. § 111.13(a)-(b).

explanation of the single correct answer and several incorrect answers for every question that Plaintiff challenged.

By letter of December 26, 2007, Plaintiff next sought to have the matter reviewed by DHS. The Director of Cargo, Maritime and Trade Policy informed Plaintiff of its determination to affirm the denial of credit for the four contested questions in a letter dated February 19, 2008. Suit in this Court subsequently followed when Plaintiff filed her summons and complaint on April 9, 2008, followed by an amended complaint on April 14, 2008. Plaintiff challenges the Secretary's denial of her score on the April 2, 2007 examination, specifically question 9.[3] Plaintiff further moves for relief under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for attorney's fees and expenses.

### JURISDICTION AND STANDARD OF REVIEW

The Court has exclusive jurisdiction over this matter pursuant

---

[3] As originally commenced, this action included two other plaintiffs besides Ms. Depersia. The original complaint challenged questions 9, 17, and 19. See Complaint p. 9. However, on January 16, 2009, the parties agreed to settle as to questions 17 and 19 in favor of plaintiffs. While this settlement resulted in passing grades for two of the plaintiffs, Ms. Depersia's score on the examination changed from 57 correct answers or 71.25% to 59 correct answers or 73.75%, still short of the requisite 75%. The Court takes this opportunity to note that both parties state Plaintiff's refigured score at 71.25%. See Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem.") at 3; Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 2. This is in part due to the fact that the stipulation agreement reflects this incorrect calculation. However, as the Defendant acknowledges, the test consists of 80 multiple choice questions worth 1.25 points each. See Def.'s Mem. at 2. Therefore, Plaintiff's revised score of 59 correct answers is more accurately calculated at 73.75%.

to 28 U.S.C. § 1581(g)(1) (2006). Regarding the appropriate standard of review, the statute provides that "[t]he findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive." 19 U.S.C. § 1641(e)(3). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951). This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's finding from being supported by substantial evidence. See Boynton v. United States, 517 F. Supp. 2d 1349, 1351 (internal citations omitted).

While the factual findings of the Secretary must be based on substantial evidence, both 19 U.S.C. § 1641 and 28 U.S.C. § 2640 are silent as to the standard of review the Court should apply to legal questions in a customs broker's license denial case. Therefore, in reviewing legal questions, the Court is guided by the Administrative Procedure Act ("APA") "which gives general guidance regarding the scope and standard of review to be applied in various circumstances." United States v. Ricci, 21 CIT 1145, 1146, 985 F. Supp. 125, 126 (1997); see also O'Quinn v. United States, 24 CIT 324, 325, 100 F. Supp. 2d 1136, 1137 (2000). Under the standard laid out in the APA, the Court will uphold the final administrative determination of the Secretary, unless the decision was "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006). "When applied to agency action independent of review of findings of fact, the arbitrary and capricious test requires that the agency engage in reasoned decision-making in grading the exam." O'Quinn, 24 CIT at 325, 100 F. Supp. 2d 1136, 1138 (internal citations omitted).

## DISCUSSION

Consistent with the broad powers vested in the Secretary for licensing customs brokers under the statute, is the authority to deny an application for a license based on the failure to pass the licensing examination. See Kenny v. Snow, 401 F.3d 1359, 1361 (Fed. Cir. 2005) ("Among the lawful grounds for denying a license is the failure to pass the licensing examination."). 19 U.S.C. § 1641(b)(2) provides that:

> Before granting the license, the Secretary may require an applicant to show any facts deemed necessary to establish that the applicant is of good moral character and qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, the Secretary may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

In its administration of this statutory provision Customs has promulgated regulations governing the conduct of the customs broker's license exam. See 19 C.F.R. § 111.11(a)(4) ("to obtain a broker's license, an individual must . . . attain[] a passing (75 percent or higher) grade on a written examination"); 19 C.F.R. §

111.16(b)(2) ("grounds sufficient to justify denial of an application for a license include . . . [t]he failure to meet any requirement set forth in [19 C.F.R.] § 111.11.").[4]

In reviewing the Secretary's decision to deny Plaintiff's application for a license, the Court "must necessarily conduct some inquiry into plaintiff's arguments and defendant's responses" concerning the question at issue. <u>Di Iorio v. United States</u>, 14 CIT 746, 747 (1990). Although the Court reviews the exam question being challenged, the "[p]arties should not conclude from the court's detailed examination of the test answers that the court is some kind of final reviewer of the [exam]." <u>Id.</u> at 752. With this in mind, the Court turns to Plaintiff's challenge of question 9.

The exam instructs applicants to choose the best answer from among the five alternatives presented. <u>See</u> Def.'s Mem. at 2. Question 9 requires the examinee to assess the type of ruling an importer is entitled to given a specific factual situation. The question reads as follows:

Question 9

---

[4] The relevant regulations also provide:

If an examinee fails to attain a passing grade on the examination taken under this section, the examinee may challenge that result by filing a written appeal with [Customs] . . . . CBP will provide to the examinee written notice of the decision on the appeal. If the CBP decision on the appeal affirms the result of the examination, the examinee may request review of the decision on the appeal by writing to the Secretary of Homeland Security . . . . 19 C.F.R. § 111.13(f).

In the following scenario, what type of ruling is the importer entitled to?

- CBP has rejected the importer's claim as to the tariff classification of green olives grown in Spain.
- Entries filed for these ongoing shipments have **NOT** been liquidated.
- Proposed rate advances (CBP Form 29) will result in substantial duty increases.
- A ruling has **NOT** been requested or issued on these import transactions.

A. A Ruling request submitted to the National Commodity Specialist Division
B. A NAFTA Advance Ruling request forwarded to CBP Headquarters
C. A protest application for further review filed at the CBP port of entry
D. An Internal Advice request submitted through the CBP port of entry
E. The importer is not entitled to request a ruling from CBP on this transaction

The official answer to question 9 is (D). Plaintiff in turn selected (A), and claims that she was improperly denied credit for her answer in large part because of how the word "entitled" was construed by Customs. According to Plaintiff, this term, as used in question 9, speaks to an action that the agency must take. Therefore, if Customs' proposed answer (D) is deemed correct, the action that CBP must afford the requesting importer is Internal Advice.[5]  See Pl.'s Mem. at 5.  Plaintiff points to § 177.11(b)(5)

---

[5] The Internal Advice provision reads in part:

(b) Certain current transactions -

(2) When no ruling has been issued. Internal advice will be sought by a Customs Service field office with respect to a current transaction for which no ruling was requested or

(continued...)

which describes the conditions under which Customs may refuse to issue Internal Advice to a requesting importer.[6] <u>See</u> Pl.'s Mem. at 5. Therefore, Plaintiff argues, an importer is never entitled to such advice, but rather "an internal advice ruling may be requested." <u>Id.</u>

On the other hand, because the question's hypothetical facts indicate that the shipments at issue were "ongoing," it is Plaintiff's contention that the importer would be entitled to submit a tariff classification ruling request to the National Commodity Specialist Division, as described in answer choice (A).

---

[5](...continued)
issued under the provisions of this part whenever a difference of opinion exists as to the interpretation or proper application of the Customs and related laws to the transaction, and the field office is requested to seek such advice by an importer or other person who would have been entitled, under § 177.1(c), to request a ruling with respect to the transaction, while prospective. The request must be submitted to the field office in writing and in accordance with the provisions of paragraph (b)(3) of this section. 19 C.F.R. § 177.11(b)(2).

[6] 19 C.F.R. § 177.11(b)(5) provides:

(5) Refusal by Headquarters Office to furnish advice. The Headquarters Office may refuse to consider the questions presented to it in the form of a request for internal advice whenever (i) the Headquarters Office determines that the period of time necessary to give adequate consideration to the questions presented would result in a withholding of action with respect to the transaction, or in any other situation, that is inconsistent with the sound administration of the Customs and related laws, and (ii) the questions presented can subsequently be raised by the importer or other interested party in the form of a protest filed in accordance with the provisions of part 174 of this chapter.

<u>Id.</u> at 4; <u>see also</u> 19 C.F.R. § 177.2(a) ("Requests for tariff classification rulings should be addressed to the Director, National Commodity Specialist Division . . ."); § 177.2(b)(2)(B) ("Rulings issued by the Director, National Commodity Specialist Division . . . are limited to prospective transactions."). In focusing on the stem of question 9 which asks, "what type of ruling is the importer entitled to?" the Plaintiff alleges that the word "entitled" operates to describe the importer's right to receive a classification ruling, as opposed to the discretionary authority of Customs in providing Internal Advice. <u>See</u> Pl.'s Mem. at 8. Plaintiff further notes that even if the official answer is deemed correct, her answer was also an appropriate response to question 9. <u>See id.</u>

Defendant explains that answer choice (D) is correct "because an examination of the question as a whole clearly shows that the olives at issue in the question had already been entered, though not liquidated, and that the importer's current claim was rejected." Def.'s Mem. at 8. Thus, while there were continuing importations of subject merchandise, the importer was "entitled" to seek a request for Internal Advice because "the importer furnished CBP with proper grounds for seeking a ruling through the internal advice procedure." <u>Id.</u> at 10. According to Customs, Plaintiff failed to glean from the information provided, the essential facts relevant to existing transactions, and instead chose to focus on

the abstracts of future imports. See id. at 13. Moreover, Defendant argues, Plaintiff's theory is flawed for exactly the same reason she opposes Customs' proposed answer choice. See id. at 11. The regulations clearly state that where a request for a prospective ruling is made to the Director, National Commodity Specialists Division, under 19 C.F.R. § 177.2(b)(2)(ii), there are instances where Customs may refuse to issue a ruling of this kind. Specifically, § 177.7(a) and (b) describe the circumstances under which Customs may refuse to consider such a request.[7] Therefore, Defendant asserts, Plaintiff's answer (A) suffers from the same inadequacies Plaintiff ascribes to CBP's answer (D). See id.

Plaintiff's position on this issue is internally inconsistent. For instance, Plaintiff insists that the lexicographic authorities compel an interpretation of the word "entitled" as one that gives

---

[7] The relevant portions of 19 C.F.R. § 177.7 read as follows:

Situations in which no ruling will be issued.

(a) Generally. No ruling letter will be issued in response to a request for a ruling which fails to comply with the provisions of this part. Moreover, no ruling letter will be issued . . . in any instance in which it appears contrary to the sound administration of the Customs and related laws to do so.

(b) Pending litigation in the United States Court of International Trade. No ruling letter will be issued with respect to any issue which is pending before the United States Court of International Trade, the United States Court of Appeals for the Federal Circuit, or any court of appeal therefrom.

"a right or legal title to: qualify one for something: furnish with proper grounds for seeking or claiming something." Pl.'s Mem. at 5. As used in question 9, Plaintiff maintains, the word "entitled" compels issuance of a ruling to a requesting importer. See id. In this way, the discretionary authority granted the Secretary, under § 177.11(b)(5), to decline an importer's request for Internal Advice is inconsistent with this interpretation, and therefore the importer is only entitled to make a request for, not actually receive the Internal Advice. Yet, when it comes to her advocacy of answer choice (A), Plaintiff ignores the distinction she draws between the type of ruling an importer is entitled to request and the type of ruling an importer is entitled to receive. Instead, Plaintiff avers, the hypothetical importer is entitled to submit a request for a binding ruling to the National Import Specialist Division because the question indicates that there are "ongoing" shipments of subject merchandise. See Pl.'s Mem. at 6. As support for her position, Plaintiff points to Customs' own summary of the District Ruling program which observes that "'the program bestows a right upon the importing public' to submit requests for classification rulings." Id. at 7 (quoting 54 Fed. Reg. 8,209 (Feb. 27, 1989)). Plaintiff's claim that an importer is entitled to make a tariff classification request to the National Commodity Specialist Division, however, suffers from the same faulty logic she imputes to Customs. If, as Plaintiff asserts, the word

"entitled" can only be construed as bestowing a right to <u>receive</u> a ruling, her charge that answer (A) is more accurate because it provides the importer a right to submit a <u>request</u> for a ruling makes no sense.

One need only examine Customs' regulations to observe that a tariff classification ruling may be withheld if certain conditions are met. <u>See</u> 19 C.F.R. § 177.7(a) ("Moreover, no ruling letter will be issued with regard to transactions or questions which are essentially hypothetical in nature or in any instance in which it appears contrary to the sound administration of the Customs and related laws to do so."). This decision is left up to the discretion of the agency in much the same way as it is under § 177.11(b)(5) (the Internal Advice provision).

Equally unpersuasive is Plaintiff's attempt at distinguishing the discretionary components of the Internal Advice and tariff classification procedures by arguing that "Customs may refuse to furnish internal advice on discretionary grounds, whereas a refusal to furnish a binding ruling must be based upon the actions of a party other than Customs." Pl.'s Reply in Supp. Mot. J. Agency R. ("Pl.'s Reply") at 7. This oversimplification of the regulations ignores the fact that both § 177.11(b)(5) and § 177.7 (binding ruling procedure) contain identical language permitting Customs to refuse to consider an importer's request in any situation in which such a request would appear contrary to "the sound administration

of the Customs and related laws." 19 C.F.R. §§ 177.11(b)(5), 177.7. Clearly, both provisions afford CBP a degree of latitude in making determinations based upon certain criteria. The failure to recognize, in her own answer choice, the deficiencies which form the basis of her challenge to Defendant's proposed answer undermines the premise of Plaintiff's complaint.

The Court therefore agrees with Defendant that this aspect of Plaintiff's reasoning is unsound in that "under Ms. Depersia's theory, her proposed answer "A" would be incorrect for the same reasons she contends "D" is incorrect." Def.'s Mem. at 11.

Perhaps anticipating the incongruity of her position, Plaintiff argues in the alternative that a "review of the two disputed answer choices ("A" and "D") illustrates that neither selection properly answers the question." Pl.'s Reply at 4. Restating her earlier position, Plaintiff claims that question 9, in its present form, can only be understood as asking: What type of ruling is the importer entitled to <u>receive</u>? Not, as the agency contends: What type of ruling is the importer entitled to <u>request</u>? Since both answers (A) and (D) cite to the latter and not the former, neither response is entirely correct. According to Plaintiff, Customs' flawed drafting of question 9 causes it to suffer from a lack of critical decision-making information necessary for an examinee to make a proper selection. <u>See id.</u> at 5 n.4. Therefore, the question is ambiguous on its face and the

Court should grant Plaintiff credit for this question.[8]  See id.

Defendant alleges that Plaintiff's strained interpretation of question 9 runs contrary to one of the accepted principles of statutory construction that "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."  See Def.'s Sur-reply at 2 (quoting King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991)).  Defendant insists that question 9 is more accurately understood when examined against the background of all the possible answer choices.  See id.  Hence, an examinee can observe that all five of the answers provided contemplate or relate to "requests" made by the hypothetical importer.  It is within this context, says Defendant, that question 9 can only be understood as seeking "to ascertain the type of ruling an importer should request based upon the facts enunciated."  Id. at 3.  In sum, Defendant concludes, question 9 is not ambiguous and clearly requires an answer based on the type of procedure on which the importer must rely to request a ruling.  See id. at 4.

At the core of the parties' disagreement is whether question

---

[8] Plaintiff makes the ancillary argument that question 9 is misleading for a second reason, namely, that an importer is not the party that seeks or receives Internal Advice. See Pl.'s Reply at 5. The Court rejects this argument outright. In point of fact, the regulations are unmistakable as to which party initiates the Internal Advice request. See 19 C.F.R. § 177.11(a) ("Advice as to the proper application of the Customs and related laws to a current transaction will be sought by a Customs Service field office whenever that office is requested to do so . . . by an importer or other person having an interest in the transaction.")

9 requires an examinee to identify the type of ruling the importer is entitled to "receive" or entitled to "request." Examination of the question stem isolated from the accompanying facts and answer choices suggests an understanding consistent with Plaintiff's hypothesis. Without further qualification of the operative language "entitled to" and "ruling," the question can be understood as asking the examinee to identify the appropriate course of action for an importer to follow in order to receive a ruling. However, as Customs correctly notes, the common meaning of a word or phrase may be colored by the context in which it is used. Closer inspection of question 9 as a whole makes clear that the question seeks to ascertain the type of ruling an importer should request. Indeed, four of the five possible answer choices, including Plaintiff's proposed answer (A), reference a "request" made by the hypothetical importer. As the Court has already noted supra, there is no procedure whereby an importer possesses an unqualified right to be issued an administrative ruling by Customs. Thus, the Court rejects the gravamen of Plaintiff's argument that question 9 is more appropriately understood as asking what ruling the importer is entitled to receive from the agency. See Pl.'s Reply at 4.

Plaintiff's alternative assumptions are similarly flawed. For example, she focuses on the presence of the term "ongoing" in the second of the four facts provided in question 9. This, according to Plaintiff, is indicative of the prospective nature of the

shipments being described in the fact pattern. Therefore, Plaintiff asserts, her answer properly recognizes that a ruling may be obtained to provide a binding tariff classification on future entries. Plaintiff's reading of this single term, however, disregards the existence of facts that focus primarily on current transactions. Moreover, Plaintiff's interpretation would render this statement superfluous. Prospective transactions may never be liquidated. The Court finds implausible the notion that this statement was intended to negative a condition that would never present itself. Rather, its intended purpose was to emphasize that the current entries had yet to be liquidated. Upon examination of the four additional facts as a whole, the inference to be drawn should be readily apparent to a reader who is being tested on their "knowledge of Customs and related laws, regulations and procedures." 19 C.F.R. 111.13(a). As the last of the four factual elements states: "A ruling has NOT been requested or issued on these import transactions." Clearly, reference is being made to the transactions described in the previous elements; i.e., unliquidated entries of green olives where a difference of opinion exists as to the appropriate tariff classification. In other words, those transactions currently before Customs. Each of the factors discussed in the fact pattern are components of the Internal Advice procedure which in turn leads to the one "best answer," that is to say answer choice (D).

The rest of Plaintiff's argument focuses on the proposition that even if the agency's answer is deemed correct, so too is Plaintiff's. The Court disagrees. It is incumbent upon the test-taker to synthesize the fact pattern provided while referencing the universe of information on which he or she is to base a decision. With this in mind, Plaintiff's proposed answer (A) possesses limited applicability. Because a tariff classification ruling may only be requested with respect to "prospective transactions" answer (A) does nothing for the current transactions emphasized in question 9. 19 C.F.R. § 177.1(a). Conversely, the Internal Advice procedure contemplates "[a]dvice or guidance as to the interpretation or proper application of the Customs and related laws . . . at any time, whether the transaction is prospective, current, or completed." 19 C.F.R. § 177.11(a). Therefore, answer (D) can properly be regarded as the "best answer" because it considers both the current transactions which form the core of question 9's hypothetical, as well as the "ongoing" shipments identified by Plaintiff. In this way, answer (D) is consistent with one of the express objectives of the license examination procedure which is to test an examinee's fitness "to render valuable service to importers and exporters." 19 C.F.R. § 111.13(a). Under the circumstances of question 9, the most valuable service an importer might receive is one which allows the importer to seek redress on both its current and ongoing

transactions.

While Customs could perhaps have used more precise language in its drafting of question 9, susceptibility of different meanings does not in and of itself render a term ambiguous. The overall meaning is unmistakable: the question seeks to identify the course of action most appropriate for the hypothetical importer with regard to the current transactions described therein. This is answer (D).

## CONCLUSION

Based on the foregoing, the Secretary's determination denying Plaintiff's appeal of the scoring of her customs broker license examination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and therefore must be sustained. Accordingly, Plaintiff's request for relief under the EAJA cannot lie. Plaintiff's Motion for Judgment on the Agency Record is denied.


 /s/ Nicholas Tsoucalas 
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**




Dated: August 11, 2009
      New York, New York